```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```
_____

**UNITED STATES OF AMERICA,**      )
                                   )
    **Plaintiff,**               )
                                   )
**v.**                             )
                                   )   No. 10-20293-A/P
**ANTHONY PAYTON,**                )
                                   )
    **Defendant.**               )
                                   )

_____

**REPORT AND RECOMMENDATION**
_____

    Before the court by order of reference is defendant Anthony Payton's Motion to Suppress, filed January 6, 2011.  (D.E. 31.) The United States ("government") filed a response in opposition on January 20, 2011.  Pursuant to the order of reference, the court conducted a suppression hearing on the motion.[1]  At the hearing, the court heard testimony from Tameka Morris, Memphis Police Department ("MPD") Officer Richard Lunati, and defendant Payton. The court admitted into evidence an Arrest Ticket and Affidavit of Complaint.  (Ex. 1).

    Based on the briefs filed in support of and in opposition to the motion, the evidence presented at the hearing, and the entire record, the court submits the following proposed findings of fact

---

[1] The suppression hearing was originally scheduled for February 16, 2011, but was continued at Payton's request to May 10, 2011.

and conclusions of law, and recommends that the Motion to Suppress be denied.

## I.   PROPOSED FINDINGS OF FACT

The court has carefully considered the testimony of all the witnesses, including their demeanor as they testified at the hearing, and finds Morris and Officer Lunati to be credible and Payton to be not credible.  Therefore, the proposed findings of fact are based on Morris's and Officer Lunati's version of the events.

On April 2, 2010, at around midnight, Tameka Morris was traveling in her vehicle with her children on Covington Pike Road in Memphis, Tennessee.  As she was driving, she heard the sound of gunshots from nearby.  Morris observed a man standing on the side of Covington Pike Road firing a shotgun.  Morris saw that the gunman, later identified as Anthony Payton, was standing next to a white Chevrolet Camaro and appeared to be screaming at someone.  After Payton stopped firing the shotgun, Morris observed him place the shotgun in the trunk of the Camaro and close the trunk.  Morris immediately called 911 and gave them a physical description of Payton and his vehicle.[2]  Morris told the 911 operator that the gunman was a black male, wore a hat, t-shirt, and blue jeans, and

---

[2] Morris testified that she had a clear view of Payton and that the street was well lit.  Her vehicle was approximately six to seven feet away from where Payton was standing.  As she passed him, she made direct eye contact with him.  Morris recalled that Payton's "eyes were so distinctive like." (Tr. at 52.)

drove a new, white Camaro with a temporary drive out tag.[3]

While Morris was on the phone with 911, she observed Payton enter the Camaro and drove away, at which time Morris made a U-turn and followed the Camaro. Morris testified to the events as follows:

> Q. All right. Now let's talk about where you stopped and called the police.
>
> A. Okay.
>
> Q. Where did you stop?
>
> A. Immediately when I saw him I'm on the phone with 911 and I'm telling them it's a shooting going on at Covington Pike. There is a shooting going on at Covington Pike.
>
> Q. All right. At that point then are you saying that Mr. Payton or that white Camaro then drove past you?
>
> A. I'm saying Mr. Payton at that time when I saw him with the shotgun, shooting the shotgun, he placed the shotgun back in the trunk of the car.
>
> Q. Right.
>
> A. And I'm calling 911. Mr. Payton gets back in the car. I'm slowing down because I don't know – when we made eye contact, I'm trying to make sure that he didn't follow me or he didn't get a good look at my license plates and he was looking out the window and we made direct eye contact.
>
> Q. Where did you make the direct eye contact?

---

[3]Morris and Officer Lunati offered conflicting testimony regarding the color of the hat. Morris testified that he had a white hat, while Officer Lunati testified that Payton had a black hat. This minor discrepancy, however, does not negate the overall credibility of Morris and Officer Lunati.

> A.   Once Mr. Payton – well, when Mr. Payton was shooting I looked – we didn't make direct eye contact at that time, but I looked directly at him in his face. When Mr. Payton got back in the car and we're like – I'm thinking to myself, oh, my God, he saw me. He knows that I saw him. When we drove past where he – I was going faster than him at first and he drove past me and we looked directly at each other. I mean, we made direct eye contact.

(Tr. at 33:25 – 35-9.)

MPD Officer Richard Lunati, who was dispatched to the scene, was provided with the description of Payton and his vehicle. Upon arriving on the scene, Officer Lunati was flagged down by Morris. As Officer Lunati was talking with Morris about what she had seen, a white Chevrolet Camaro with a temporary tag drove past them. Morris immediately pointed to the Camaro and identified the Camaro as the gunman's vehicle.

Officer Lunati pulled behind the Camaro and activated his blue lights. After the Camaro stopped, Officer Lunati, who was by himself, got out of his vehicle and approached the Camaro from the passenger's side. He saw Payton in the driver's seat, a female in the front passenger's seat, and a young child in the back seat. Officer Lunati told Payton that he matched the description of an individual who was seen firing shots in the area and asked for his identification.[4] Payton acted "calm" and "cooperative" and

---

[4] At the suppression hearing, Payton testified that he was, in fact, the individual who was seen firing the shotgun on Covington Pike Road.

-4-

provided his identification. Officer Lunati then asked Payton if he would open the trunk and allow the officer to search the vehicle. Payton said "yes," stepped out of his vehicle, and opened the trunk.[5] Officer Lunati looked in the open trunk and saw a shotgun. Officer Lunati seized the shotgun and then placed Payton in the back of his police vehicle. Payton was later indicted for being a felon in possession of the shotgun, in violation of 18 U.S.C. § 922(g).

## II.   PROPOSED CONCLUSIONS OF LAW

In his Motion to Suppress, Payton argues that Officer Lunati did not have probable cause or reasonable suspicion to stop and search the Camaro, and that any evidence or statements obtained by law enforcement as a result of the unlawful vehicle stop and search must be suppressed. Payton also asserts that the consent to search the Camaro was not given knowingly and voluntarily.[6]

**A.   Reasonable Suspicion**

"An investigative stop of a vehicle is permissible under the Fourth Amendment where the stop is supported by reasonable

---

[5] Payton testified that he opened the trunk because Officer Lunati allegedly drew his weapon and ordered him to open the trunk. The court finds Payton's testimony to be not credible, and instead credits Officer Lunati's testimony that no weapons were drawn and that he asked Payton for permission to look in his trunk.

[6] Payton also argues in his motion that all post-arrest statements must be suppressed as fruits of the unlawful vehicle stop. According to Officer Lunati, Payton did not make any post-arrest statements.

suspicion of wrongdoing." <u>United States v. Flores</u>, 571 F.3d 541, 544 (6th Cir. 2009) (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 22 (1968); <u>United States v. Williams</u>, 962 F.2d 1218, 1223-24 (6th Cir. 1992)). In deciding whether an officer had reasonable suspicion to stop a vehicle, "[c]ourts must determine from the totality of the circumstances whether law enforcement had an objective and particularized basis for suspecting criminal wrongdoing." <u>United States v. Perez</u>, 440 F.3d 363, 371 (6th Cir. 2004) (citing <u>United States v. Arvizu</u>, 534 U.S. 266, 273-77 (2002); <u>United States v. Orsolini</u>, 300 F.3d 724, 728-29 (6th Cir. 2002)).

Officer Lunati received information that Morris had seen a black male wearing a hat, t-shirt, and blue jeans firing a shotgun on Covington Pike Road. She described the gunman's vehicle as a brand new, white Chevrolet Camaro with a temporary drive out tag. When Officer Lunati arrived on the scene, Morris pointed out the Camaro to the officer, and the vehicle matched the description previously provided by Morris. Based on this information, Officer Lunati had reasonable suspicion to initiate a stop of Payton's vehicle. <u>See, e.g.</u>, <u>United States v. Booker</u>, 579 F.3d 835, 838-40 (7th Cir. 2009) (stating that police officers had reasonable suspicion to support investigatory stop of defendant's van where police received an emergency call reporting gunshots, a witness flagged down a police officer when the officer arrived on the scene, and the witness pointed out defendant's van to officer).

### B.     Automobile Exception

Once Officer Lunati stopped the Camaro, he was permitted to search the vehicle under the "automobile exception" to the Fourth Amendment, which allows law enforcement to search a vehicle without a warrant when officers have probable cause to believe that the vehicle contains evidence of criminal activity. See United States v. Galaviz, No. 07-2518, 2011 WL 1707185, at *6 (6th Cir. Jan. 14, 2011) (citing United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007)); United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998) (citing United States v. Ross, 456 U.S. 798, 799 (1982); Smith v. Thornburg, 136 F.3d 1070, 1074 (6th Cir. 1998)); United States v. Collier, No. 6:05-58-DCR, 2011 WL 1882395, at *4 (E.D. Ky. May 17, 2011) (citing Galaviz, 2011 WL 1707185, at *6); United States v. Allen, No. 1:10CR-10-R, 2011 WL 635876, at *7 (W.D. Ky. Feb. 11, 2011) (citing Carroll v. United States, 267 U.S. 132, 147 (1925)). "The requirements of probable cause are satisfied where the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." United States v. Davis, 430 F.3d 345, 352 (6th Cir. 2005) (internal quotation marks and citations omitted).

The automobile exception applies in this case because Officer Lunati had probable cause that the shotgun previously fired by

Payton was inside the Camaro. The officer received reliable information from an eye witness, Morris, that Payton fired the shotgun on a public street which, among other crimes, amounted to reckless endangerment in violation of Tenn. Code Ann. § 39-13-103.[7] She provided an accurate description of Payton and his vehicle. As Officer Lunati was talking with Morris at the location of the shooting, a vehicle drove by that Morris identified as being the same vehicle driven by the gunman. After Officer Lunati pulled the vehicle over, he observed that the driver matched the gunman's physical description. Based on this information, Officer Lunati had probable cause that the vehicle contained evidence of criminal activity, and thus was permitted to search the Camaro under the automobile exception. See, e.g., United States v. Robinson, No. 3:10-CR-112, 2011 WL 1188488, at *6 (E.D. Tenn. Mar. 28, 2011) (stating that search of defendant's vehicle was valid based in part on automobile exception where police had probable cause to believe defendant's vehicle contained evidence of robbery).

**C.   Consent to Search**

In addition, Officer Lunati was authorized to search the trunk of the Camaro because he obtained Payton's consent to search. "If an officer obtains consent to search, a warrantless search does not

---

[7] Reckless endangerment occurs when a person "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). Reckless endangerment committed with a deadly weapon is a Class E Felony. T.C.A. § 39-13-103(b).

offend the Constitution." United States v. Moon, 513 F.3d 527, 537 (6th Cir. 2008) (citing Davis v. United States, 328 U.S. 582, 593-94 (1946)).  "An officer with consent needs neither a warrant nor probable cause to conduct a constitutional search." United States v. Jenkins, 92 F.3d 430, 436 (6th Cir. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).  "[A] search is not unreasonable if an individual with a privacy interest in the item to be searched gives voluntary consent."  United States v. McCauley, 548 F.3d 440, 446 (6th Cir. 2008) (citing Bustamonte, 412 U.S. at 219).  After pulling over the Camaro, Officer Lunati asked Payton if he would open the trunk and allow the officer to search the trunk.  Payton said "yes," stepped out of his vehicle, and voluntarily opened the trunk.  Payton, as the driver, had the authority to give Officer Lunati consent to search the vehicle. United States v. Matlock, 415 U.S. 164, 171 (1974); see also United States v. Robinson, No. 1:07-CR-1, 2007 WL 2138635, at *4 n.5 (E.D. Tenn. July 23, 2007) (stating that driver of vehicle had authority to give consent to search) (citing Matlock, 415 U.S. at 171); United States v. Reeves, No. 1:06:CR:291, 2007 WL 1238885, at *3 (W.D. Mich. Apr. 27, 2007) (same) (citing Matlock, 415 U.S. 164; United States v. Morales, 821 F.2d 396, 399 (3d Cir. 1988)). Officer Lunati was the only officer present at the time, he did not draw his weapon or threaten any of the occupants, Payton was calm and cooperative, and there is no credible evidence that Payton was

coerced, intimidated or threatened in any way.

### III. RECOMMENDATION

For the reasons above, the court recommends that the Motion to Suppress be denied.[8]

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

June 8, 2011
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(c).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[8] Payton alleges in his motion that he was handcuffed, placed in the back of a police vehicle, and questioned about the shooting, and that when he refused to talk, officers turned on the car heater to the maximum setting and closed all the doors and windows.  There was no evidence presented at the suppression hearing that would support these allegations.  Payton, who testified at the hearing, did not mention any of these events.  Further, Officer Lunati testified that when he placed Payton in the police vehicle, the windows were down and the heater was not on.  (Tr. at 86-87.)